SCHLESINGER v. FOOTE

(January 13, 1930. Opinion and Decree.)

Legier, McEnerny & Waguespack, of New Orleans, attorneys for plaintiff, appellee.

William H. Talbot, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. Plaintiff sues defendant for the sum of $181.10, the alleged damage to his Hupmobile sedan, as a result of a collision between the plaintiff's and defendant's automobiles, about 12:30 p. m., December 13, 1928, at the intersection of Maple and Lowerline streets in the city of New Orleans. Defendant denied liability and pleaded contributory negligence. There was judgment in favor of the plaintiff for the amount prayed for and defendant has appealed.

Lowerline street is paved and runs from the lake to the river. Maple street is also paved and runs from uptown to downtown. Both streets are approximately 25 feet in width. At the intersection, Lowerline runs straight, but Maple street curves towards the lake, as you come from uptown toward downtown. As a result of this curve towards the left or lake side, as you face downtown the uptown lake curbing and sidewalk extend much farther towards the river than the downtown lake curbing and sidewalk; and the river, downtown curbing and sidewalk extend farther towards the lake than the uptown river curbing and sidewalk. A car, therefore, going from uptown in the direction of downtown, on Maple street, would have to turn to its left at the intersection of Lowerline in order to negotiate the curve at this point.

The defendant was driving a 1924 Packard touring car from uptown in the direction of downtown, on Maple street. There were sitting with him in the front seat two young ladies. One of these ladies testified in the case, but, as she was in conversation at the time of the accident with the other young lady, her sister, she was unable to throw very much light on how the accident occurred. The sister did not testify as she is alleged to have been seriously injured and was in Colorado at the time the case was tried.

The plaintiff's Hupmobile sedan was being driven by his wife from the lake in the direction of the river and she was alone. As these automobiles approached the intersection, a collision between them ensued in about the center of the intersection. The right front portion of the plaintiff's car struck the left side of the defendant's car where the left front fender joined the running board, and at the point where the left front door is located. The Packard car ran upon the downtown river sidewalk and came to rest on an angle of 45 degrees upon a guy wire, with its front facing up and the rear bumpers and wheels resting on the ground, as if the car were climbing the wire. The Hupmobile came to rest at the curb on the downtown lake side of the intersection, facing in the direction of the lake.

Plaintiff contends that his car was being operated at a lawful and moderate rate of speed and had entered the intersection first, and, therefore, was entitled to proceed under the city traffic ordinance; and that defendant's car, coming at an estimated and unlawful rate of speed of 35 or 40 miles an hour, dashed across the path of his car, and that, in order to avoid the accident, his wife applied the brakes and attempted to turn the car to the left, with the result that the right front part of the Hupmobile struck the left front part of the Packard car, and that defendant operated his car recklessly on account of drinking whiskey.

The defendant contends that he approached the intersection at about 25 miles an hour and was in the intersection first, and that, as his car entered the intersection first, he had the right to proceed, and secondly, that as his car approached from the right side of plaintiff's car, he was entitled to the right-of-way under the city traffic ordinance; and that he was not under the influence of liquor.

Plaintiff's witnesses were his wife, the driver of the Hupmobile, John Jackson, who lived on the uptown river corner of the intersection and who came to the scene immediately after the accident on account of hearing the crash, and two policemen. Defendant's witnesses were two friends, who saw him after the accident, and one of the young lady guests and himself.

The evidence is conflicting as to the rate of speed of defendant's car, but from the physical facts in the case we are convinced that the defendant's car was being operated at an excessive rate of speed. The Packard car not only crossed the intersection, but ran over the sidewalk curbing, crushing the right front wheel, and ran up the guy wire of a telephone pole. The rear wheels imbedded themselves in the mud on the sidewalk on account of the fact that the propelling power of the car is in the rear wheels.

We are of the opinion that the plaintiff's car was being operated at a moderate rate of speed, because, after striking the defendant's car, it turned to the left and stopped at the downtown lake side of Ma-

ple street, practically in the intersection. We are further borne out in this conclusion by the small amount of damage which was done to the defendant's car by the impact. The photographs introduced in evidence show that the left front fender, at the point where it joins the running board, was bent and crushed, the wooden running board was practically demolished and a dent was placed in the left front door. The evidence shows that it was the right front part of plaintiff's car that struck the defendant's car at this point.

The defendant argues that the plaintiff struck his car head-on at a fast rate of speed, but the extent of the damages to the defendant's car and the fact that it was not forced out of its path, but continued straight on its course, indicates very forcefully to us that plaintiff's car was going at a moderate rate of speed and struck the defendant's car a glancing blow.

The defendant testified that he did not make any attempt to apply his brakes, but continued straight on his course in an effort to get across before plaintiff's car struck him. Plaintiff's wife testified that she entered the intersection first and that when she saw the speeding automobile of defendant she attempted to stop, and realizing that if she continued on her course that the defendant's car would strike her before she got across, applied her brakes and attempted to turn to her left, down Maple street, at which time the right front part of her machine struck the defendant's car. This explains why defendant's car was struck on the left front side.

It appears that plaintiff's wife had been at a bridge party and was returning home at the time of the accident. Defendant had called at the home of a young lady friend and spent the evening there, and some time after 11 o'clock decided to take a ride. He admits that he stopped at a restaurant about a block and a half from the scene of the accident, where he had one drink of whiskey with ginger ale. The police, in examining his automobile, found one empty whiskey bottle and another one that had a Houston (Texas) prescription on it in which there remained a small quantity of whiskey. There were also two glasses in the rear of defendant's car. The two officers and Mr. Jackson testified that the odor of whiskey on defendant's breath was very pronounced. Defendant denies being intoxicated and offers the testimony of two witnesses, who saw him after the accident, and they testify that he was not under the influence of liquor.

The record convinces us that the accident was due solely to the defendant's fault, first, in operating his car at an excessive rate of speed, and second, because defendant operated his car in a careless and reckless manner as a result of the effect of drinking whiskey.

Counsel for the defendant contends that, under the traffic ordinance of the city of New Orleans, an automobile approaching from the right at or approximately at the same time another automobile is about to enter the intersection, has the right-of-way and that his client's car had actually entered the intersection first, as shown by the damage to his car. However, the evidence does not convince us that the defendant's car entered the intersection first, and we account for the fact that plaintiff's car struck defendant's on the left front side because the driver of the Hupmobile attempted to stop and turn to the right, whereas defendant admits that he made no attempt to stop, but continued on his course. The difference in the rates of speed of the two cars further explains this fact.

Section 1 of Article II, paragraph 3, of the traffic ordinance of the city of New Orleans fixes the speed limit at 20 miles an hour. This ordinance provides:

"RECKLESS DRIVING: Nothing in the foregoing sections, including the right of way section, shall be so construed as to mean that vehicles shall not, at all times, be driven with due regard to the rights and safety of others in the public streets, or that the speed may at any time be greater than is safe and proper under the conditions then obtaining."

In the case of Bagert v. Maestri et al., 11 La. App. (unreported), No. 11,489 of this court, decided November 13, 1928, this court said:

"The fact that one of two colliding automobiles enjoys the right-of-way under the provisions of a municipal ordinance will not excuse dangerous and reckless speed on the part of the driver of the car having the right-of-way.
"The right-of-way is not a right of pre-emption, and automobiles using the right-of-way must be operated with due regard for the rights of others to use the public streets. The streets of the City of New Orleans are not speedways or race courses."

and in the case of Vance vs. Poree, 5 La. App. 109, it was said:

"The right-of-way established by municipal ordinance, in favor of vehicles using certain streets, is not an exclusive privilege, and it must be exercised with due regard to the right of other vehicles to use the intersecting street."

There is not any question as to the quantum.

The judge a quo rendered judgment for plaintiff for the amount claimed and after a careful reading of the record we cannot say he is in error.

For the reasons assigned the judgment appealed from is affirmed.